| | | |
|---|---|---|
| *TAMMY SABIA NICKERSON,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 1:11-cv-87-GZS* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

**REPORT AND RECOMMENDED DECISION**[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge erred in (i) finding her depression and anxiety nonsevere, (ii) finding her obesity-related chronic pain nonsevere, and (iii) relying on vocational expert evidence rendered irrelevant by the omission of limitations resulting from depression, anxiety, and chronic pain. *See* Statement of Specific Errors ("Statement of Errors") (Docket No. 11) at 1-7. I find no reversible error and, accordingly, recommend that the court affirm the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 16, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

had severe impairments of morbid obesity, plantar fasciitis, asthma, and insomnia, Finding 2, Record at 12; that she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she could not climb ladders, ropes, or scaffolds, could occasionally balance and climb ramps and stairs, and had to avoid even moderate exposure to respiratory irritants and to hazards such as unprotected heights, Finding 4, *id*. at 14; that, considering her age (22 years old, defined as a younger individual, on the date her application was filed), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 16; and that she, therefore, had not been disabled since May 22, 2008, the date that her application was filed, Finding 10, *id*. at 17. The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 4-6, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R.

§ 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Failure to Find Severe Impairments of Anxiety, Depression

The plaintiff argues that, in deeming her anxiety and depression nonsevere, the administrative law judge failed to consider (i) the records of treating psychologist Roger Phelps, Psy.D., who assessed her in 2008 with major depressive disorder and a GAF, or global assessment of functioning, score of 48,[2] (ii) the finding of treating physician Mark Sutherland,

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev. 2000) ("DSM-IV¬TR"), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34 (boldface omitted).

D.O., on January 14, 2009, that she had some component of mood disorder, (iii) Dr. Phelps' opinion that she had marked difficulties stemming from her mental impairments, (iv) her testimony at hearing that she had been treating with Dr. Phelps on a regular and continuous basis approximately every two weeks, and (v) her testimony regarding the symptoms caused by her depression and anxiety, including low energy, fatigue, and being overwhelmed. *See* Statement of Errors at 1-4. She contends that this evidence was sufficient to meet her *de minimis* Step 2 burden of demonstrating the existence of severe mental impairments. *See id*. at 4. At oral argument, her counsel particularly emphasized the administrative law judge's asserted error in finding that "[t]reating source records do not document complaints of persistent mental symptoms, and repeatedly indicate that her mood was normal." Record at 13 (citations omitted).

I find no fault with the administrative law judge's handling of the plaintiff's anxiety and depression. The administrative law judge did not ignore Dr. Phelps' records or mental RFC opinion or the plaintiff's testimony with regard to the impact of her mental impairments. Instead, he found Dr. Phelps' opinion, including his assessment that the plaintiff suffered from major fatigue that markedly limited her functioning in several areas, *see id.* at 590-92, unsupported by the evidence as a whole and seemingly based on the plaintiff's statements, which he deemed not entirely credible, *see id*. at 15-16. The administrative law judge also found gaps in mental health treatment, as well as indications during treatment that the plaintiff's mood was normal. *See id*. at 13. These findings, in turn, were supported by substantial evidence.

As an initial matter, as the administrative law judge noted, *see id.*, despite the plaintiff's testimony regarding the frequency with which she had seen Dr. Phelps, *see id*. at 604, the records in evidence reflected that he had seen her twice, in November and December 2008, when she was dealing with several stressors, including homelessness, and that she did not pursue further

treatment with him until May 2010, *see id*. at 283 (November 25, 2008, note of Dr. Phelps), 284 (December 4, 2008, GAF assessment of Dr. Phelps), 574-81 (May 5, 2010, note, GAF assessment, and treatment plan of Dr. Phelps), 582-84 (February 26, 2009, discharge summary and treatment plan of Dr. Phelps), 585-88 (December 9, 2008, note of Dr. Phelps).

Her mental health treatment otherwise had been minimal, with some treating source records indicating that her mood and/or affect were normal. *See id*. at 13; *see also, e.g., id*. at 332 (January 23, 2008, note of Dr. Sutherland), 530 (August 11, 2009, note of William Gregory Feero, M.D., and Stephanie Calkins, M.D.), 540 (July 30, 2009, note of Drs. Feero and Calkins).

Further, as the administrative law judge noted, *see id*. at 13, when Disability Determination Services ("DDS") examining consultant Gary Rasmussen, Ph.D., evaluated the plaintiff on August 11, 2008, he found her sociable, attentive, and displaying no problems with memory or concentration, *see id*. at 189, 192. Dr. Rasmussen did not arrive at any diagnosis and indicated that the plaintiff had no work-related mental limitations. *See id*. at 192 (conclusion of Dr. Rasmussen that the plaintiff appeared able to perform such basic job-related psychological skills as communication, understanding, and following instructions, did not appear to have any significant deficits in her capacity to concentrate or to memorize, appeared to be able to follow complex instructions, and exhibited a range of well-developed social skills).

As the administrative law judge also observed, *see id*. at 16, the two other DDS mental health consultants whose opinions are of record, Thomas Knox, Ph.D., and Scott W. Hoch, Ph.D., both deemed the plaintiff's mental impairments nonsevere, *see id*. at 193, 203, 205 (August 14, 2008, opinion of Dr. Knox), 496, 506, 508 (February 6, 2009, opinion of Dr. Hoch). Although Dr. Knox's assessment predated the plaintiff's treatment by Dr. Phelps, Dr. Hoch had

the benefit of review of Dr. Phelps' notes of November 25, 2008, and December 4, 2008, including Dr. Phelps' assessment at that time of a GAF score of 48, *see id*. at 508.

In any event, as this court has previously held, "[a] GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions." *LaFontaine v. Astrue*, No. 1:10-cv-527-JAW, 2011 WL 4459197, at *4 (D. Me. Sept. 25, 2011) (rec. dec., *aff'd* Oct. 13, 2011). A GAF score of 41 to 50 reflects the assessor's opinion that the individual has serious symptoms *or* serious impairment of social *or* occupational functioning. *See id*. As the administrative law judge pointed out, *see* Record at 13, the plaintiff was under great stress when Dr. Phelps assessed her with a GAF score of 48. She was parenting a small infant in a homeless shelter while her husband sought work, and she reported that she was shaky, sleep-deprived, and irritable. *See id*. at 283. Moreover, when Dr. Phelps assessed the plaintiff on May 5, 2010, he noted that her condition was better than it had been a year before, *see id*. at 574, and assessed her with a GAF score of 53, *see id*. at 578.[3]

The administrative law judge did not separately discuss Dr. Sutherland's note of January 14, 2009. *See id*. at 12-16. However, nothing turns on the omission. Dr. Sutherland merely stated that he was certain that there was "some component of mood disorder[,]" that it would be appropriate to use a medication for pain control that also could improve mood, and that the plaintiff at that time was living in a homeless shelter, "which can't be empowering." *Id*. at 570. Those observations are not inconsistent with a finding that the plaintiff's anxiety and depression did not impose more than minimal limitations on work-related functioning.

---

[3] A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id*. (boldface omitted).

The administrative law judge also supportably declined to adopt Dr. Phelps' RFC opinion that the plaintiff had "major fatigue" that markedly limited her functioning in several areas, *see id*. at 591, on the additional ground that it appeared to be based on the plaintiff's own statements, *see id*. at 16. Dr. Phelps listed, as among the bases for his opinion, discussion with the plaintiff. *See id*. at 590-91. The administrative law judge set forth a number of reasons for his negative credibility finding, *see id*. at 15, which the plaintiff does not separately challenge, *see generally* Statement of Errors.[4]

It was the job of the administrative law judge to resolve conflicts in the evidence. *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."). He was not obliged to adopt the mental RFC opinion of Dr. Phelps. He duly considered the opinion, rejected it on supportable bases, and relied on conflicting expert mental RFC opinions that he reasonably deemed more consistent with the overall evidence of record. No more was required. *See, e.g.,* 20 C.F.R. § 416.927(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion").

## B. Failure To Find Severe Impairment of Chronic Pain Syndrome

The plaintiff next contends that the administrative law judge erred in failing to find that she suffered from a severe chronic pain syndrome related to her obesity. *See* Statement of Errors

---

[4] Among other things, the administrative law judge noted that (i) the plaintiff had told Dr. Rasmussen that she stayed up until early in the morning playing computer games, indicating that her alleged daytime fatigue might be alleviated at least somewhat by a change in sleep hygiene, *see* Record at 15, 191, (ii) the plaintiff had not alleged that her sleep problems prevented her from attending properly to her child or operating a motor vehicle safely, *see id*. at 15, (iii) primary care records did not reflect more than sporadic complaints of sleep problems or any particular concern on the part of her physicians about sleep deprivation, *see id*. at 15, (iv) the plaintiff was prescribed trazodone as a sleep aid by her primary care physician in June 2009, *see id*. at 15, 551, and (v) records from this source indicate that, as of July 30, 2009, she denied insomnia and appeared well, and as of August 11, 2009, and January 15, 2010, she appeared alert and in no acute distress, *see id*. at 15, 523, 530, 538, 540.

at 4-7. She states that the records of Dr. Sutherland, Dr. Calkins, and Matt Lambert, M.P.T., document that she suffered from shoulder pain, knee pain, and neck/back pain related to her morbid obesity. *See id.*

At Step 2 of his analysis, the administrative law judge found that the plaintiff suffered from a severe impairment of morbid obesity, *see* Finding 2, Record at 12, but deemed her claimed chronic pain syndrome nonsevere on the basis, *inter alia*, that her limited treatment for the condition argued against a finding that her functioning was significantly limited by physical discomfort, *see id.* at 12. Specifically, he observed that, but for a chiropractic visit in April 2008, *see id.* at 174-77, and four physical therapy visits in 2009, *see id.* at 518-21, her treatment for pain since 2008 had consisted of taking medications such as ibuprofen and tramadol, *see, e.g., id.* at 531 (August 11, 2009, note of Drs. Feero and Calkins referring plaintiff for physical therapy, recommending use of ibuprofen and heat for low back pain), 550-51 (June 17, 2009, note of Dr. Sutherland indicating that anti-inflammatory medicine meloxicam had been somewhat helpful for back pain but plaintiff continued with persistent pain; prescribing trazadone), 570 (January 14, 2009, note of Dr. Sutherland stating intent to renew tramadol prescription for pain syndrome and declining to prescribe narcotics).[5]

At Step 4 of his analysis, the administrative law judge again discussed the plaintiff's claimed chronic pain, *see id.* at 15, supportably finding that (i) her minimal treatment was inconsistent with a conclusion that medications such as ibuprofen and tramadol prescribed by her physician were ineffective in alleviating her discomfort, *see, e.g., id.* at 173-77, 518-21, 531, 550-51, (ii) there was no evidence of record pertaining to her physical problems after January

---

[5] The administrative law judge evidently overlooked notes indicating that the plaintiff saw a chiropractor on eight occasions between April 2, 2008, and June 11, 2008. *See* Record at 173. However, even taking these notes into account, this still reflects a limited period of treatment.

2010, eight months prior to the hearing, *see id*. at 2-3, casting doubt on the reliability of her claims of ongoing, disabling pain, (iii) primary care records from April 2009 showed that she complained of foot and back pain, stating that she was "on her feet all day long[,]" *id*. at 562 (April 7, 2009, note of Dr. Calkins), contradicting her statement that she could only stand for a few minutes at a time, *see id*. at 154, 157, (iv) in June 2009, she reported that her generalized myalgias bothered her most when she first got up but improved "as she gets moving through the day[,]" *id*. at 551 (June 17, 2009, note of Dr. Sutherland), suggesting that her pain was not as severe and intractable, or her activities as restricted, as alleged, (v) physical therapy records from 2009 described her prognosis for functional improvement as good, *see id*. at 518 (September 14, 2009, note of Lambert), and (vi) she indicated in August 2009 that she was finding it hard to exercise due to her "schedule[,]" *id*. at 528 (August 11, 2009, note of Drs. Feero and Calkins), which seemed inconsistent with her allegation that her activities were severely circumscribed.

These conclusions are based on substantial evidence in the record as a whole, including those portions of the record relied upon by the plaintiff.

Beyond this, as the plaintiff's counsel conceded at oral argument, there is no expert opinion of record indicating that the plaintiff's chronic pain imposed limitations other than those assessed by the administrative law judge. As counsel for the commissioner observed at oral argument, this in itself is fatal to the plaintiff's bid for reversal and remand with respect to chronic pain. *See, e.g., Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

Based on extant expert RFC opinions, the administrative law judge made a supportable finding regarding the plaintiff's physical RFC. DDS nonexamining consultant Donald Trumbull, M.D., filed an RFC opinion dated August 4, 2008, indicating that the plaintiff had failed to establish the existence of any physical limitations stemming from her impairments. *See* Record at 181-88. DDS nonexamining consultant Richard T. Chamberlin, M.D., filed an RFC opinion dated March 3, 2009, in which, after considering the plaintiff's history of syncopal episodes, mild intermittent asthma, migraine headaches, and obesity, *see id.* at 510, 515, he found that she was limited to occasionally climbing ramps and stairs, occasionally balancing, and never climbing ladders, ropes, or scaffolds, needed to avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, *etc.*, and needed to avoid hazards, *see id.* at 512, 514. Finally, DDS nonexamining consultant Thomas Tarnay, M.D., testified at the plaintiff's September 1, 2010, hearing that he endorsed Dr. Chamberlin's statement of the plaintiff's limitations, despite finding the plaintiff's claimed shoulder, low back, and knee symptoms to be consistent with her morbid obesity, *see id.* at 615-16.

The administrative law judge rejected the conclusion of Dr. Trumbull that the plaintiff's physical impairments imposed no limitations on her functioning but embraced the opinion of Dr. Chamberlin, as endorsed by Dr. Tarnay at the hearing, that they imposed the limitations ultimately found. *See id.* at 16. His RFC finding, accordingly, is supported by substantial evidence.

### C. Irrelevant Vocational Testimony

The plaintiff's third and final point of error, that the administrative law judge relied at Step 5 on irrelevant vocational expert testimony, hinges entirely on the success of at least one of her first two points of error. *See* Statement of Errors at 7. Should the court agree that the first

two points are without merit, reversal and remand will not be warranted on the basis of the third point.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 21st day of March, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge